UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| **IN RE: ONGLYZA (SAXAGLIPTIN) AND KOMBIGLYZE XR (SAXAGLIPTIN AND METFORMIN) PRODUCTS LIABILITY LITIGATION** | Master File No. 5:18-md-2809-KKC<br>**MDL No. 2809**<br>**All Cases** |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I.      SUMMARY JUDGMENT IS REQUIRED BECAUSE PLAINTIFFS LACK ADMISSIBLE EVIDENCE RAISING A TRIABLE ISSUE OF MATERIAL FACT ON GENERAL CAUSATION ................................................................... 4

      A.      Expert Testimony Is Required to Create a Triable Issue of Material Fact on Medical Causation. ....................................................................... 4

      B.      Plaintiffs' Claims Involve Medical Causation and Thus Require Expert Testimony. ................................................................................................. 6

      C.      Plaintiffs Do Not Have, and Cannot Now Develop, Admissible Expert Causation Testimony ...................................................................... 7

II.     ANY NON-EXPERT EVIDENCE PROFFERED BY PLAINTIFFS CANNOT OVERCOME THE EXPERT TESTIMONY REQUIREMENT ...................................... 9

      A.      Plaintiffs May Not Rely on Evidence That Was Insufficient to Support Reliable Expert Testimony. ...................................................................... 9

      B.      Plaintiffs Lack Non-Expert Evidence of Causation Sufficient to Create a Triable Issue of Material Fact. ............................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abilify (Aripiprazole) Prods. Liab. Litig.*,
  2021 WL 4951944 (N.D. Fla. July 15, 2021) ...............................................................................4

*In re Bausch & Lomb Inc. Contacts Lens Sol. Prods. Liab. Litig.*,
  693 F. Supp. 2d 515 (D.S.C. 2010)................................................................................................5

*In re Baycol Prods. Litig.*,
  321 F. Supp. 2d 1118 (D. Minn. 2004).........................................................................................5

*Bigham ex rel. Bigham v. DaimlerChrysler Corp.*,
  462 F. Supp. 2d 766 (E.D. Ky. 2006) ...........................................................................................4

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).......................................................................................................................4

*Glowczenski v. Taser Int'l, Inc.*,
  594 F. App'x 723 (2d Cir. 2014) ..................................................................................................8

*Johnson v. Zimmer Holdings, Inc.*,
  2014 WL 3546083 (E.D. Ky. July 16, 2014)................................................................................4

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*,
  227 F. Supp. 3d 452 (D.S.C. 2017), *aff'd*, 892 F.3d 624 (4th Cir. 2018) ..................................6

*May-Weirauch v. Ethicon, Inc.*,
  2020 WL 6946445 (C.D. Ill. Nov. 25, 2020)................................................................................4

*Meade v. Parsley*,
  2010 WL 4909435 (S.D. W. Va. Nov. 24, 2010) .........................................................................6

*Morales v Am. Honda Co., Inc.*,
  71 F.3d 531 (6th Cir. 1995) ..........................................................................................................5

*In re Mirena IUD Prods. Liab. Litig.*,
  202 F. Supp. 3d 304 (S.D.N.Y. 2016), *aff'd*, 713 F. App'x 11 (2d Cir. 2017)................ *passim*

*In re: Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*,
  387 F. Supp. 3d 323 (S.D.N.Y 2019), *aff'd,* 982 F.3d 113 (2d Cir. 2020) ......................6, 9, 10

*Pluck v. BP Oil Pipeline Co.*,
  640 F.3d 671 (6th Cir. 2011) ........................................................................................................5

*Samaan v. St. Joseph's Hospital*,
    670 F.3d 21 (1st Cir. 2012)......................................................................................................8

*Wells v. SmithKline Beecham Corp.*,
    601 F.3d 375 (5th Cir. 2010) .................................................................................................5

*In re Zoloft (Sertralinehydrochloide) Prods. Liab. Litig.*,
    176 F. Supp. 3d 483 (E.D. Pa. 2016), *aff'd*, 858 F.3d 787 (3d Cir. 2017).............................6, 9

**Other Authorities**

Fed. R. Civ. P. 56(a) ...............................................................................................................4

## PRELIMINARY STATEMENT

Three years ago, this Court phased discovery to focus, first, on whether Plaintiffs could carry their burden of establishing general causation — that is, whether saxagliptin can cause heart failure.  DE 179 at 1.  That process ended with the Court's exclusion of Plaintiffs' only general causation expert, Dr. Parag Goyal, because his opinion was formed "contrary to reliable scientific method."   DE 740 at 30.   Plaintiffs accordingly have no expert who may testify on general causation to a reasonable degree of medical probability — a requirement under federal law that Plaintiffs have acknowledged.  *See, e.g.*, *In re Mirena IUD Prods. Liab. Litig.*, 202 F. Supp. 3d 304, 310 (S.D.N.Y. 2016), *aff'd*, 713 F. App'x 11 (2d Cir. 2017); *see also* DE 707, Aug. 9, 2021 Hr'g Tr. at 18:7-11 (Ms. Moore: "So when we talk about whether we can meet our threshold on presenting admissible expert testimony, whether we can show that these drugs are capable of causing heart failure . . . .").  Without expert testimony to establish general causation, Plaintiffs cannot meet their burden to establish a triable issue of material fact to survive summary judgment.

Despite the clear law requiring summary judgment in the absence of expert causation testimony, Plaintiffs seek to proceed with no expert witness, presumably by arguing that fragments of non-expert evidence related to general causation allow them to evade the expert testimony requirement in every jurisdiction.  This Court should reject any such argument.  Permitting Plaintiffs to proceed when they have been unable to produce an expert with a reliable methodology would subvert the purposes of the Federal Rules of Civil Procedure and the Federal Rule of Evidence governing experts.  It would also be contrary to Plaintiffs' own acknowledgements about the need for expert testimony and their statements that general causation was a key threshold legal issue in the case requiring resolution.  Even if the Court were to consider Plaintiffs' non-expert evidence on general causation, however, the result would be the same.  Plaintiffs have no evidence

1

that, by itself, establishes that saxagliptin causes heart failure, and certainly none that rises to the level that would justify abandoning the ordinary requirement for expert testimony.

In the alternative, were Plaintiffs to seek permission to obtain new expert testimony in order to meet their burden, such relief should be denied as untimely and unjustified.

The Court should grant summary judgment in these cases.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs began filing their lawsuits in April 2016, and the Judicial Panel on Multidistrict Litigation established this MDL in February 2018. *See* DE 1. Each lawsuit alleges that the use of Defendants' medication saxagliptin creates the "risk of serious adverse events, including heart failure, congestive heart failure, cardiac failure, death from heart failure, and other adverse events" and accordingly caused Plaintiffs' injuries. DE 185 ¶ 10, Master Complaint.

Shortly following the creation of the MDL, Defendants proposed, and Plaintiffs opposed, the use of phased general causation discovery. In their opposition, however, Plaintiffs did not at any point suggest that general causation would not be a gating issue. Rather, they argued only that Defendants' *Daubert* motions would fail and that time would have been wasted. *See* DE 168. Indeed, they acknowledged that "bellwether-specific expert discovery" and trial could only proceed "once the Court rules on any pending *Daubert* and summary judgment motions" regarding general causation, *id.* at 11, and that general causation discovery was "pivotal" to the larger case, DE 178 at 5. In ordering a phased discovery schedule in Case Management Order No. 1, this Court likewise stated that "[g]eneral causation is a critical issue in this case, common to all actions" and also noted that "[i]f the plaintiffs are unable to establish that Onglyza or Kombiglyze XR is capable of causing any person to develop heart failure or other conditions alleged by the plaintiffs, then the parties will not be required to undergo the time and expense of further discovery and litigation." DE 179 at 1. Plaintiffs again recognized the importance of general causation as a threshold issue

during the August 2021 *Daubert* hearing, acknowledging that Plaintiffs' case could not reach a jury without expert evidence on general causation.  *See* DE 707, Aug. 9, 2021 Hr'g Tr. at 13:9-10 (Ms. Moore: "So at the end of the week, it will be clear that this case should go to a jury.").

To carry their burden, Plaintiffs designated a single expert who opined that saxagliptin causes heart failure, cardiologist Dr. Parag Goyal.[1]  DE 647 at 1 & n.3.  Defendants designated five experts who opined that there was insufficient evidence to demonstrate a causal relationship between saxagliptin and heart failure.  Ex. 2 to the Declaration of Emily Ullman ("Ullman Decl."), Expert Report of W. Abraham at 44; Ullman Decl. Ex. 3, Expert Report of M. Fowler at 37; DE 712, Aug. 11, 2021 Hr'g. Tr. at 5:23-6:1 (Adler testimony); *id.* at 139:12-20 (Lee testimony); *id.* at 209:5-13 (Koliwad testimony).  On January 22, 2021, Plaintiffs moved to exclude the testimony of four of Defendants' experts, and Defendants moved to exclude Dr. Goyal's testimony.  DE 628; DE 630; DE 631; DE 633.  From August 9 through August 11, 2021 the Court, in conjunction with the corresponding California coordinated proceeding, held a *Daubert* hearing on both parties' motions.  During the three-day hearing, Dr. Goyal and four other experts were presented and examined by both parties.  *See* DE 707; DE 710; DE 712.  The parties filed post-hearing briefing on August 27, 2021 and September 10, 2021.  DEs 714-721; DEs 725-732.  On January 5, 2022, this Court issued an order granting Defendants' motion to exclude the testimony of Dr. Goyal and denying Plaintiffs' motions to exclude Defendants' experts.  DE 740.

Defendants have since conferred with Plaintiffs about a procedure for entering judgment in these cases based on the absence of required expert testimony.  Plaintiffs refused to discuss any

---

[1] Plaintiffs also designated Dr. Martin Wells, a biostatistician and epidemiologist.  DE 646 at 1. Dr. Wells, however, does not "opine on whether saxagliptin can cause heart failure."  *Id.* at 1 n.3.

such procedure without identifying any specific basis on which their cases may proceed given the

Goyal exclusion ruling.  Defendants accordingly have been required to file this motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Where the

non-moving party "fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . .

there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning

an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citation omitted).  Thus, if "the nonmoving

party has failed to make a sufficient showing on an essential element of her case with respect to

which she has the burden of proof[,] . . . the moving party is entitled to judgment as a matter of

law."  *Id.* at 323.

## ARGUMENT

**I.**    **SUMMARY JUDGMENT IS REQUIRED BECAUSE PLAINTIFFS LACK ADMISSIBLE EVIDENCE RAISING A TRIABLE ISSUE OF MATERIAL FACT ON GENERAL CAUSATION**

A.    Expert Testimony Is Required to Create a Triable Issue of Material Fact on Medical Causation.

Each of Plaintiffs' claims[2] relies on proof of a causal connection between saxagliptin and

Plaintiffs' alleged injuries.  *See Mirena*, 202 F. Supp. 3d at 310 ("As in any products liability or

---

[2] Plaintiffs' claims include strict liability/design defect; negligence; strict liability/failure to warn; breach of warranty of merchantability; breach of express warranty; breach of implied warranty; violation of consumer protection laws and deceptive trade practices; loss of consortium; survival action; and wrongful death.  *See* DE 185, Master Complaint.  Courts grant summary judgment on all of these types of claims in the absence of expert testimony on causation issues.  *See, e.g.*, *Johnson v. Zimmer Holdings, Inc.*, 2014 WL 3546083 at *2 (E.D. Ky.

personal injury action, Plaintiffs must prove causation — that the Defendants' conduct (such as a failure to adequately warn) was the proximate cause of Plaintiffs' injuries"); *In re Bausch & Lomb Inc. Contacts Lens Sol. Prods. Liab. Litig.*, 693 F. Supp. 2d 515, 520 (D.S.C. 2010) (same). To establish causation in a product liability case, plaintiffs "must establish both general and specific causation . . . through the testimony of a medical expert." *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676-77 (6th Cir. 2011). General causation, "whether a substance is capable of causing a particular injury in the general population," must be established before moving to specific causation, "whether a substance caused a particular individual's injury." *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010) (quotation omitted).

In pharmaceutical product liability cases involving complex medical issues, plaintiffs must demonstrate general causation through expert testimony. *See Mirena*, 202 F. Supp. 3d at 310 ("[T]he substantive law across all relevant jurisdictions holds that where a causal link is beyond the knowledge or expertise of a lay jury, expert testimony is required to establish causation") (internal quotations and citations omitted); *In re Baycol Prods. Litig.*, 321 F. Supp. 2d 1118, 1126 (D. Minn. 2004). "Expert testimony is required in cases involving complex causation issues . . . because without it the jury is left to speculate on medical issues with which the average person is unfamiliar." *Mirena*, 202 F. Supp. 3d at 311. Indeed, the law of every jurisdiction uniformly

---

July 16, 2014) (noting that both "any product liability claim" and breach of warranty claims required plaintiff to prove factual causation) (citing *Morales v Am. Honda Co., Inc.*, 71 F.3d 531, 537 (6th Cir. 1995)) (emphasis added); *Bigham ex rel. Bigham v. DaimlerChrysler Corp.*, 462 F. Supp. 2d 766, 771-72, 780 (E.D. Ky. 2006) (discussing plaintiffs' obligation to establish causation where plaintiff alleged strict liability, negligence, loss of consortium, and wrongful death); *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, 2021 WL 4951944, at *7-8 (N.D. Fla. July 15, 2021) (granting summary judgment on all claims, including violation of consumer protection law, for which expert testimony on causation was inadmissible); *May-Weirauch v. Ethicon, Inc.*, 2020 WL 6946445 (C.D. Ill. Nov. 25, 2020) (granting summary judgment on negligence, strict liability, breach of warranty, and violation of consumer protection laws, among others, in absence of admissible expert causation testimony).

5

requires expert testimony to satisfy a plaintiff's burden of proof in cases involving complex issues

of medical causation.  *See* Ullman Decl. Ex. 1, Appendix[3]; *In re: Mirena IUS Levonorgestrel-*

*Related Prods. Liab. Litig. (No. II)*, 387 F. Supp. 3d 323, 341 (S.D.N.Y 2019), *aff'd,* 982 F.3d 113

(2d Cir. 2020) ("It is well established that 'expert testimony is required to establish causation'

where the issue of causation is 'beyond the knowledge of lay jurors.'  Other courts, surveying the

law of the 50 states and territories, have concluded that each jurisdiction typically adheres to this

principle.") (internal citations omitted).

For this reason, courts routinely grant summary judgment when a party cannot introduce

scientifically reliable expert evidence on causation.  *See, e.g.*, *Mirena*, 202 F. Supp. 3d at 327-28;

*Mirena No. II*, 387 F. Supp. 3d at 356; *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices*

*& Prods. Liab. Litig.*, 227 F. Supp. 3d 452, 469, 485 (D.S.C. 2017), *aff'd*, 892 F.3d 624 (4th Cir.

2018); *In re Zoloft (Sertralinehydrochloide) Prods. Liab. Litig.*, 176 F. Supp. 3d 483, 498-501

(E.D. Pa. 2016), *aff'd*, 858 F.3d 787 (3d Cir. 2017); *Meade v. Parsley*, 2010 WL 4909435, at *7-

8 (S.D. W. Va. Nov. 24, 2010).

      B.      Plaintiffs' Claims Involve Medical Causation and Thus Require Expert
             Testimony.

This case involves the precise type of "medical causation" issues that require expert

testimony.  Plaintiffs have alleged that saxagliptin is capable of causing heart failure, that this

capability was misrepresented by Defendants, and that saxagliptin did in fact cause heart failure in

their cases.  *See* DE 185.  Whether such a causal relationship exists necessarily involves scientific

---

[3] According to the complaints and plaintiff profile forms filed in this MDL, Plaintiffs reside in 39 states.  For the sake of completeness, and in the event that another jurisdiction's law may apply to the claims of a given Plaintiff, Defendants additionally provide instructional law for the 14 jurisdictions that have not to date been identified as applying to Plaintiffs: Alaska, District of Columbia, Hawaii, Kansas, Maine, Massachusetts, Nebraska, New Hampshire, North Dakota, Oregon, Puerto Rico, Rhode Island, Vermont, and Virgin Islands.

and medical issues "beyond the knowledge or expertise of a lay jury." *Mirena*, 202 F. Supp. 3d at

310.  Even if he had been permitted to serve as an expert, Dr. Goyal would not have been able to

proffer a definite theory on how saxagliptin might cause heart failure.  Ullman Decl. Ex. 5, Goyal

Report at 12 (acknowledging that while he thought there were multiple "proposed biological

mechanisms" for a relationship between saxagliptin and heart failure, "the specific mechanistic

link . . . is not totally clear").  Laypersons cannot be expected to parse through evidence without

the guidance of experts if even would-be subject matter experts cannot confidently speak to the

disputed issues.

Indeed, Plaintiffs implicitly acknowledged that causation in this case is an issue that

requires particular, specialized expertise:  when moving to exclude two of Defendants' general

causation experts, Plaintiffs argued that the experts were not qualified to "opine on whether

saxagliptin can cause heart failure" because they are endocrinologists, rather than cardiologists.

DE 630-1 at 7; *see also id.* ("'heart failure' clearly falls within the expertise of a cardiologist").

That is, Plaintiffs contended that the causation issues in this case required not only medical

expertise, but expertise of a narrowly-defined type.

      C.      Plaintiffs Do Not Have, and Cannot Now Develop, Admissible Expert Causation
                  Testimony

This Court recognized in its *Daubert* ruling that Dr. Goyal is the only expert identified by

Plaintiffs – either proffered in this litigation or independent –who has ever reached the opinion

that saxagliptin is capable of causing heart failure.  *See* DE 740 at 29.  Excluding his opinion

therefore leaves Plaintiffs without an expert capable of testifying that general causation exists in

these matters.

Plaintiffs have nonetheless implied that the second expert they designated, Dr. Martin

Wells, a biostatistician and epidemiologist, is a general causation expert whose opinion supports

7

Dr. Goyal's.  DE 646 at 1.  However, Plaintiffs have also acknowledged that because "Dr. Wells has no specialized training in heart failure," he is unable to "opine on whether saxagliptin can cause heart failure."  *Id.* at 1 n.3.  Dr. Wells echoed that concession at the *Daubert* hearing, saying "I'm not qualified" to make a determination on causation.  DE 707, Aug. 9, 2021 Hr'g Tr. at 122:13-16.  Dr. Wells did not offer an opinion as to general causation because he is unqualified to do so, by both his and Plaintiffs' admission.

Nor should Plaintiffs now be permitted to offer any new experts on general causation issues.  The Court's order phasing this litigation reflected that this was a gating issue and that further litigation would not be necessary if Plaintiffs failed to carry their causation burden at this stage.  *See* DE 179 at 1.  The disclosure of new experts more than nineteen months after the Court's deadline for disclosure of expert witnesses, which itself was repeatedly extended, *see* DE 529, Case Management Order No. 9, would be wildly untimely as well as prejudicial to Defendants. *See, e.g.*, *Glowczenski v. Taser Int'l, Inc.*, 594 F. App'x 723, 725 (2d Cir. 2014) (affirming denial of Plaintiffs' motion to allow naming of new expert "well after Defendants had been put to the burden of preparing motions for summary judgment" and without "identify[ing] any expert, or even represent[ing] that they had located one, let alone proffer[ing] an expert opinion"); *Samaan v. St. Joseph's Hospital*, 670 F.3d 21, 37 (1st Cir. 2012) ("A party who knowingly chooses to put all his eggs in one basket is hard-pressed to complain when the basket proves inadequate and the trial court refuses to allow him to substitute a new and previously undisclosed basket for it.").  This Court has been quite clear with the parties:  "[e]xpert discovery is over."  DE 676 at 5.  Giving Plaintiffs a second bite at the general causation apple at this juncture would render moot years of effort on this litigation by both the parties and the Court.

8

Following the Court's *Daubert* ruling on Dr. Goyal, and given Dr. Wells's lack of an opinion on general causation, Plaintiffs have no experts who can reliably testify to general causation. Accordingly, summary judgment is appropriate because Plaintiffs are unable to show "a genuine dispute of material fact as to causation." *Mirena No. II*, 387 F. Supp. 3d. at 358 (internal citation omitted).

## II.   ANY NON-EXPERT EVIDENCE PROFFERED BY PLAINTIFFS CANNOT OVERCOME THE EXPERT TESTIMONY REQUIREMENT

Plaintiffs may not establish a triable issue of material fact as to causation using evidence other than the reliable testimony of an expert proffering an opinion that general causation exists. Courts have rejected attempts to establish medical causation using such non-expert evidence. *See, e.g.*, *In re Zoloft (Sertralinehydrochloride) Prods. Liab. Litig.*, 176 F. Supp. 3d 483, 498-99 (E.D. Pa. 2016), *aff'd*, 858 F.3d 787 (3d Cir. 2017) (rejecting plaintiffs' argument that they should be permitted to proceed using "cobbled together evidence" without expert testimony). And Plaintiffs have agreed throughout this process that expertise is required to opine reliably on whether general causation exists. *See* DE 647 at 3-4 (arguing that the causation issues in dispute were properly addressed by Dr. Goyal precisely because of his expertise as a cardiologist). If Plaintiffs were now to reverse course and seek to proceed based on the non-expert evidence that they used to bolster Dr. Goyal's general causation opinion, that evidence would be insufficient to avoid summary judgment. *See* DE 721 at 4 (claiming that "[Dr. Goyal's] conclusion is consistent with the FDA's, the American Heart Association's, and AstraZeneca's own scientists' conclusions that saxagliptin can cause heart failure"); *see also id.* at 13-15 (arguing that "the FDA, the American Heart Association, and AstraZeneca have all reached the same conclusion" as Dr. Goyal).

A.   Plaintiffs May Not Rely on Evidence That Was Insufficient to Support Reliable Expert Testimony.

Throughout this litigation, Plaintiffs have repeatedly insisted that Dr. Goyal's now-excluded causation opinions incorporated "all of the completed, available data and evidence." DE 647 at 2; *see also* DE 721 at 3 ("[Dr. Goyal] undertook a comprehensive review of the available data"). This Court excluded Dr. Goyal's opinion on the basis that his analysis of the available data and evidence "is contrary to reliable scientific method" and thus did not satisfy the requirements for expert testimony under Federal Rule of Evidence 702. DE 740 at 30.

Nothing about the evidence on which Dr. Goyal relied has changed in the period since this Court excluded his opinion — nothing except that Plaintiffs can no longer assert that they have an expert who is reliably interpreting that evidence. Plaintiffs may not escape their burden to show methodological soundness by simply declining to offer an expert to opine as to causation. The rules governing expert admissibility would be stripped of their gatekeeping function if a plaintiff were able to ask a jury to draw the same unreliable conclusions based on the same evidence that an expert was precluded from relying on in offering causation opinions. *See, e.g.*, *Mirena*, 202 F. Supp. 3d at 319 ("A court's statement, in effect, that 'Plaintiff loses because he has no expert on general causation, and by the way, he does not have anything else either,' is not the same as a statement that 'Plaintiff would have won if he had something else'—and it certainly does not suggest that something else could be something much less reliable than expert testimony."). If Plaintiffs are unable to offer expert testimony that is based on a sound methodology, they cannot use the same underlying data to argue for an excluded opinion through lawyer argument and unscientific implication.

This result would also be contrary to the purpose of the expert testimony requirement: Expert testimony is required in cases where lay jurors are ill-equipped to evaluate the claims without the assistance of an expert. But if Plaintiffs were permitted to proceed where their expert's

10

methodology was deemed insufficient, it would make it *easier* for Plaintiffs to survive a motion for summary judgment without an expert.  This outcome would handicap jurors in the most complex cases and would be contrary to the basic fairness and truth-seeking functions of the judicial system.  *Mirena No. II*, 387 F. Supp. at 346 ("Plaintiffs' proposal to put data potentially relevant to this extremely complicated scientific inquiry before a jury in the absence of a reliable expert opinion, and to ask the jury to reach a conclusion from it as to general causation, is an invitation to speculation, mischief, and error.  It disserves the foundational goal of the Federal Rules of Evidence: ascertaining the truth and securing a just determination.") (internal quotation and citation omitted); *Mirena*, 202 F. Supp. 3d at 319 ("The danger of a jury speculating on scientific issues means that, at least absent the clearest and most unambiguous admission that the product or device in question can cause the alleged injury, a jury exposed to admissions but not expert testimony will be without the grounding in science necessary to determine whether, as a scientific matter, the events the plaintiff posits can occur in real life.").  It would also provide an alternative path forward in cases where plaintiffs have difficulty obtaining admissible expert opinion — without regard to whether that difficulty is due to the inherent falseness of the claim or the unreliability of a plaintiff's theories.

Plaintiffs should also not be allowed to proceed if they produce new evidence that was *not* previously considered by their expert witness.  This outcome, too, would subvert the gatekeeping function of *Daubert*.  If a plaintiff has evidence that they believe unambiguously establishes causation, it is properly considered by their general causation expert.  If Plaintiffs are permitted to identify purportedly key causation evidence only after an expert has been excluded, that evidence can avoid the scrutiny of methodologically-appropriate review.  If evidence is *not* provided to and

11

reviewed by a plaintiff's expert witness, that is an admission that the evidence was insufficient to meet the standard for causation.

        B.        Plaintiffs Lack Non-Expert Evidence of Causation Sufficient to Create a Triable Issue of Material Fact.

Even if Plaintiffs could rely on non-expert evidence to establish causation, they would still be unable to survive summary judgment.  To date Plaintiffs have identified in this litigation no specific evidence which they contend allows them to avoid the fact that their sole causation expert has been excluded.  However, during the *Daubert* process, Plaintiffs identified three categories of evidence that they claimed were "consistent with" Dr. Goyal's opinion: "the FDA's, the American Heart Association's, and AstraZeneca's own scientists' conclusions that saxagliptin can cause heart failure." DE 721 at 4.  But none of these sources ever reached the conclusion that saxagliptin causes heart failure — at best, the evidence Plaintiffs identify reflects an *association* between saxagliptin and heart failure identified in the SAVOR results; it does not establish *causation*. Indeed, when confronted with the evidence related to the FDA's and AHA's opinions, Dr. Goyal was forced to concede that the entities found an association in the SAVOR data, but not causation. *See, e.g.*, DE 710, Aug. 10, 2021 Hr'g Tr. at 196:21-198:25 (acknowledging that FDA did not conclude saxagliptin causes heart failure in either its commentary documents or saxagliptin's label); *id.* at 188:16-189:19 (acknowledging that AHA statement "is different from something that's a known cause").  And Dr. Goyal was further forced to acknowledged that "there is a difference between an association and causation" and "[t]wo things can be associated without one causing the other." *Id.* at 201:8-13.  Plaintiffs' expert Dr. Wells testified not only that the two concepts are distinct, but that particular expertise — which even he, much less a jury, lacked — is required to determine whether there exists a causal relationship between two associated items.  DE

12

707, Aug. 9, 2021 Hr'g Tr. at 46:11-21. Statements by the FDA and AHA accordingly fail to create a dispute of material fact as to the existence of causation.

Furthermore, none of the non-expert evidence Plaintiffs cite accounts for the significant body of evidence developed by both Defendants and independent researchers in the years since the SAVOR results were announced. As set forth in the testimony of Defendants' experts and in Defendants' briefing, numerous studies subsequent to SAVOR have found no association between saxagliptin and heart failure, and it is those studies in part that have led Defendants' experts to conclude that there is no evidence of a causal relationship. Ex. 2, Expert Report of W. Abraham at 22-35; DE 710, Aug. 10, 2021 Hr'g Tr. at 90:9-21, 91:4-8. Comments made before those studies were conducted and published do not reflect the current and complete scientific record. In excluding Dr. Goyal's testimony, this Court noted that because Dr. Goyal had "fail[ed] to consider any of the relevant human data other than SAVOR without providing any sound rationale for failing to do so" and engaged in a "result-driven analysis," his general causation opinion "does not reflect scientific knowledge, is not derived by the scientific method, and is not good science." DE 740 at 33, 36 (internal quotations and citations omitted). Plaintiffs should not be allowed to replace an expert's impermissible "cherry picked" analysis, *id.* at 36, by simply jettisoning the expert in favor of offering a collection of incomplete evidence through other means.

Out-of-context or outdated statements cannot create a dispute of material fact on a complex medical question like general causation. This is especially so when even Plaintiffs' own proposed expert has acknowledged that most of the fragmentary evidence on which Plaintiffs rely does not establish causation. Summary judgment is appropriate.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion

for Summary Judgment.


Respectfully submitted,

By: */s/ Emily S. Ullman*
Phyllis A. Jones
Emily S. Ullman
Kathleen E. Paley
David Sneed
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-6000
Email: pajones@cov.com
Email: eullman@cov.com

Paul W. Schmidt
Covington & Burling LLP
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1000
Email: pschmidt@cov.com

Carol Dan Browning
Stites & Harbison PLLC
400 West Market Street, Suite 1800
Louisville, KY 40202-3352
Telephone: (502) 587-3400
Email: cbrowning@stites.com

*Counsel for Defendants Bristol-Myers Squibb
Company, AstraZeneca Pharmaceuticals LP,
and McKesson Corporation*

14